**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

PROFESSIONAL TOWING & RECOVERY
OPERATORS OF ILLINOIS, an Illinois non-
profit association, WES'S SERVICE, INC,
and NORTH SHORE TOWING, INC.,

                    Plaintiffs,

       v.

ROD R. BLAGOJEVICH, in his official
capacity as Governor of the State of Illinois,
James R. Thompson Center
100 West Randolph Street
Chicago, Illinois 60601,

CHARLES E. BOX, in his official capacity a
Chairman of the Illinois Commerce
Commission & Transportation Division
477 South River Road
Des Plaines, Illinois 60016, and

LISA MADIGAN, in her official capacity as
Attorney General for the State of Illinois,
James R. Thompson Center
100 West Randolph Street
Chicago, Illinois  60601,

                    Defendants.

CIVIL ACTION

> FILED: JULY 18, 2008
>
> No.  08CV4096
>
> JUDGE DOW
> MAGISTRATE JUDGE ASHMAN
> RCC

---

### COMPLAINT FOR DECLARATORY ORDER AND INJUNCTIVE RELIEF

Come now the Plaintiffs, by and through their attorneys, and complain against the Defendants.  In support thereof, Plaintiffs state as follows:

### NATURE OF THE ACTION

1.    This action is brought pursuant to the laws of the United States for an order declaring certain Illinois statutes regulating towing-motor carriers to be preempted

by, and in violation of, federal law.  Plaintiffs further allege that Defendants presently lack authority and jurisdiction to enforce the Illinois statutes complained of, yet are doing so in an arbitrary and capricious manner that violates Plaintiffs' rights to due process.  Plaintiffs seek a declaratory order pursuant to Title 28, Section 2201 of the United States Code.  Plaintiffs also seek temporary and permanent injunctions enjoining Defendants from enforcing said statutes.

## JURISDICTION AND VENUE

2.      Jurisdiction is invoked pursuant to 28 U.S.C. Sections 1331, 1337, and 2201.

3.      Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b).  The law at issue in this case is applicable only to towing-motor carriers located in Cook, Will, Kane, Du Page and Winnebago Counties, all counties within this district.   *See* 28 U.S.C., Section 93(a).  Further, the defendants all maintain active official offices within this district.

## PARTIES

4.      Plaintiff Professional Towing and Recovery Operators of Illinois (PTROI), is an Illinois non-profit corporation, with its principal place of business located in Pekin, Illinois.  PTROI was organized in 1981 and is the statewide trade organization for the automotive towing industry.  PTROI is dedicated to promoting the interests and welfare of all towing-storage operations in the State of Illinois.  Its membership includes towing companies located in Cook, Will, Kane, Du Page and Winnebago Counties that are engaged in the business of removing damaged or disabled vehicles from public or private property by means of towing or otherwise, and thereafter relocating and storing

2

such vehicles.  PTROI has standing to sue in this matter as the representative of those member companies that are substantially affected by the motor carrier regulations challenged herein.

5.      Plaintiff Wes's Service, Inc., is an Illinois corporation with its principal place of business in Calumet City, Illinois.  It is engaged in the business of removing damaged or disabled vehicles from public or private property by means of towing or otherwise, and thereafter relocating and storing such vehicles.

6.      Plaintiff North Shore Towing, Inc. is an Illinois corporation with its principal place of business in Evanston, Illinois.  It is engaged in the business of removing damaged or disabled vehicles from public or private property by means of towing or otherwise, and thereafter relocating and storing such vehicles.

7.      Defendant Rod R. Blagojevich is the Governor of the State of Illinois and holds the power and authority attendant thereto.  He is the chief executive officer for the State of Illinois.

8.      Defendant Charles E. Box is the Chairman of the Illinois Commerce Commission and holds the power and authority attendant thereto.   The Illinois Commerce Commission is the agency charged with enforcement of the statutes challenged herein.

9.       Defendant Lisa Madigan is the Attorney General for the State of Illinois and holds the power and authority attendant thereto.  She is sued in her capacity as the chief legal advisor to the Governor and all state departments.  The Defendant Madigan is made a party to this action because the validity of certain state statutes is at issue herein. *See* Ill. S. Ct. Rule 19.

## FACTS

**A.    THE 2007 STATE TOWING LAW**

10.    On June 6, 2007, the 95th Illinois legislature enacted Public Law 095-0562, titled the "Illinois Commercial Safety Towing Law" (hereinafter referred to as the "2007 State Towing Law") (*See* **EXHIBIT A**, attached hereto).  That law was signed by the Governor on August 31, 2007, and went into effect on July 1, 2008.  It is codified in the Illinois Vehicle Code at 625 ILCS 5/18d.

11.    The 2007 State Towing Law is applicable in all counties with a population in excess of one million and counties with populations less than one million that have adopted the Commercial Relocation of Trespassing Vehicles Law (625 ILCS 5/18a). *See* 625 ILCS 5/18d-180.  At present, the law applies to towing operations in Cook, Will, Kane, Du Page and Winnebago Counties.

12.    The law purports to regulate "commercial vehicle safety relocators" (CVSRs) in those five counties.  A CVSR is defined as "any person or entity engaged in the business of removing damaged or disabled vehicles from public or private property by means of towing or otherwise, and thereafter relocating and storing such vehicles." 625 ILCS 5/18d-105.  Thus, the law purports to apply to all towing businesses which tow and store damaged/disabled vehicles, regardless of whether the tow is with or without the prior consent of the vehicle owner or operator.

13.    Among other things, the 2007 State Towing Law provides that a CVSR must:

a.    Hold a valid, current safety relocator's registration certificate issued by the Illinois Commerce Commission (ICC). (Sec. 18d-115).

b.    Not commence a tow before receiving specific authorization from the vehicle owner or operator after providing said vehicle owner or operator with certain written enumerated disclosures, in a form approved by the ICC, including information relating to the CVSR, the location to which the vehicle is to be towed, and an itemized description of the vehicle owner/operator's rights under the State Towing Law.  (Sec. 18d-120).

c.    Provide a vehicle owner or operator, upon demand, an invoice containing specific information enumerated by the statute, and maintain copies of such invoices for five (5) years. (Sec. 18d-125).

d.    Post one or more signs in a prominent place at its storage facility itemizing the vehicle owner/operator's rights under the State Towing Law.  (Sec. 18d-130).

e.    Maintain copies of all disclosure forms and invoices for a period of five (5) years. (Sec. 18d-135).

f.    Carry a certified copy of an effective CVSR registration certificate in each tow vehicle. (Sec. 18d-145).

g.    Refrain from obtaining a waiver or limit of liability for any cognizable cause of action, under statute, tort, or contract, from a vehicle owner/operator. (Sec. 18d-150).

h.    Comply with a request for documentation from, or respond to an investigation by, the ICC under penalty of suspension of its registration certificate or monetary fines up to $1,000 per violation. (Sec. 18d-155).

     i.     Accept major credit cards for the payment of towing and storage fees. (Sec. 18d-165).

14.     Defendants herein are empowered by Illinois law to enforce the 2007 State Towing Law and, on July 1, 2008, they began enforcing that law (*See* **EXHIBIT B**, ICC Press Release, June 26, 2008).

**B.    FEDERAL PREEMPTION OF INTRASTATE MOTOR CARRIER REGULATION**

15.     The Interstate Commerce Act (ICA), as amended by the Federal Aviation Administration Authorization Act of 1994, Pub.L. 103-305, Title VI, August 23, 1994, 108 Stat. 1605, and the ICC Termination Act of 1995, 109 Stat. 899, preempts State and local regulation of motor carriers of property.  The watershed 1994 amendment, now codified at 49 U.S.C. § 14501(c) (*See* **EXHIBIT C**, attached hereto), provides, in general, as follows:

> [A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of any motor carrier . . . with respect to the transportation of property.

16.     A "motor carrier" is defined at 49 U.S.C. §13102(12) as "a person providing motor vehicle transportation for compensation."  PTROI is an association of motor carriers of property as defined by federal statute.

17.     "Section 14501(c) was adopted by Congress in order to deregulate the motor carrier industry … Congress recognized that widespread disparate regulation of the motor carrier industry was inefficient, increased costs, and reduced competition and innovation." *Tocher v. City of Santa Ana*, 219 F.3d 1040 (9th Cir. 2000) *abrogated in part by City of Columbus v. Ours Garage and Wrecker Service*, 536 U.S. 424, 122 S.Ct. 2226, 153 L.Ed.2d 430, 70 USLW 4620 (2002).

18.    The ICA expressly preempts the regulatory authority of State governments over matters relating to the "price," "route" and/or "service" of intrastate motors carriers of property.

19.    There are, however, several exemptions to preemption relevant to towing motor carriers.   The 1994 amendments to the ICA, which concluded the federal government's deregulation of the motor carrier industry, contained a logical exemption from federal deregulation for state motor vehicle safety regulations (the "safety exemption"):

> [The general rule of deregulation] shall not restrict the safety regulatory authority of a State with respect to motor vehicles ... or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

> 49 U.S.C., Section 14501(c)(2)(A)

Accordingly, Plaintiffs do not challenge Section 18d-170 of the 2007 State Towing Law mandating insurance coverage for all risks associated with the towing of vehicles.

20.    In the ICC Termination Act of 1995, Congress carved another exemption to the general rule of motor carrier deregulation, specifically relating to towing motor carriers, giving State and local governments the authority to regulate the price charged for towing without the prior consent or authorization of the owner or operator of a motor vehicle ("nonconsensual towing"):

> [The general rule of deregulation] does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, *if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle*.

49 U.S.C, Section 14501(c)(2)(C)(Emphasis supplied).

21.    "In passing the exception for regulation of nonconsensual towing codified in Section 14501(c)(2)(C), Congress acknowledged that states … should only be permitted to regulate towing services under limited circumstances." *Tocher, supra.*

22.    In 2005, in the SAFETEA-LU (Pub.L. 109-59, § 4105(a)), Congress added yet another exemption relating to *nonconsensual* towing, providing that a State may require written authorization from the owner or lessee of private property, or the on-site presence of such owner or lessee, or both, as a prerequisite to towing a vehicle from private property without the consent of the owner or operator of the vehicle:

> Nothing in [the general rule of deregulation] shall be construed to prevent a State from requiring that, *in the case of a motor vehicle to be towed from private property without the consent of the owner or operator of the vehicle*, the person towing the vehicle have prior written authorization from the property owner or lessee (or an employee or agent thereof) or that such owner or lessee (or an employee or agent thereof) be present at the time the vehicle is towed from the property, or both.

49 U.S.C., Section 14501(c)(5)(Emphasis supplied).

23.    In sum, the State's authority to regulate intrastate towing-motor carriers is at present limited to three specific areas: (1) matters genuinely responsive to safety concerns, 49 U.S.C., Section 14501(c)(2)(A) and *Ours Garage, supra*, at 536 U.S. 442, (2) the price that may be charged for *nonconsensual* towing, 49 U.S.C, Section 14501(c)(2)(C), and (3) in the limited circumstance of a *nonconsensual* tow from private property, requiring that the person towing the vehicle have prior written authorization from the property owner or lessee or that such owner or lessee be present at the time of the tow, or both.  49 U.S.C, Section 14501(c)(5).

### C.    GENERAL ALLEGATIONS

24.    The business activities of the members of PTROI in Cook, Will, Kane, Du Page and Winnebago Counties are directly and materially affected by the 2007 State Towing Law, which authorizes the ICC to regulate their intrastate motor carrier operations.

25.    The 2007 State Towing Law has more than an indirect, remote, or tenuous effect upon the prices, routes, and services of the motor carrier operations of the business entities represented by PTROI.

26.    The 2007 State Towing Law exceeds the lawful authority of the State to regulate towing-motor carriers.    Specifically, the 2007 State Towing Law regulates *consensual* towing services in matters not genuinely responsive to safety.

27.    Although Section 18d-115 of the 2007 State Towing Law provides that a towing motor carrier affected by the law shall not operate after July 1, 2008, without a valid, current safety relocator's registration certificate issued by the ICC, the ICC has yet to promulgate administrative rules and regulations for the issuance of such registration certificates.  No certificates have been issued.

28.    Despite the absence of any mechanism to obtain a registration certificate, the ICC police department has nevertheless begun enforcement of the disclosure provisions of the 2007 State Towing Law by means of detention and issuance of citations.

29.    This cause of action presents an actual controversy that is ripe for judicial determination.

## CAUSES OF ACTION

### COUNT I
### Federal Preemption (Facial Preemption)

30.     Plaintiffs incorporate by reference herein the allegations contained in Paragraphs 1 through 29.

31.     PTROI asserts that the following provisions of the 2007 State Towing Law, facially regulating the price, routes and/or service of *consensual* towing services provided by towing-motor carriers, have been expressly preempted by federal law:

    a.     **Sec. 18d-115**, requiring a towing-motor carrier engaged in consensual towing to hold a valid, current safety relocator's registration certificate issued by the ICC.

    b.     **Sec. 18d-120**, requiring that a towing-motor carrier engaged in consensual towing not commence a tow before receiving specific authorization from the vehicle owner or operator after providing said vehicle owner or operator with certain written enumerated disclosures, in a form approved by the ICC, including information relating to the CVSR, the location to which the vehicle it to be towed, and an itemized description of the vehicle owner/operator's rights under the State Towing Law.

    c.     **Sec. 18d-125**, requiring a towing-motor carrier engaged in consensual towing to provide a vehicle owner or operator, upon demand, an invoice containing specific information enumerated by the statute, and maintain copies of such invoices for five (5) years.

d.    **Sec. 18d-130**, requiring a towing-motor carrier engaged in consensual towing to post one or more signs in a prominent place at its storage facility itemizing the vehicle owner/operator's rights under the State Towing Law.

e.    **Sec. 18d-135**, requiring a towing-motor carrier engaged in consensual towing to maintain copies of all disclosure forms and invoices for a period of five (5) years.

f.    **Sec. 18d-145**, requiring a towing-motor carrier engaged in consensual towing to carry a certified copy of an effective CVSR registration certificate in each tow vehicle.

g.    **Sec. 18d-150**, forbidding a towing-motor carrier engaged in consensual towing from obtaining a waiver or limit of liability for any cognizable cause of action, under statute, tort, or contract, from a vehicle owner/operator.

h.    **Sec. 18d-155**, requiring a towing-motor carrier engaged in consensual towing to comply with a request for documentation from, or respond to an investigation by, the ICC under penalty of suspension or its registration certificate or monetary fines up to $1,000 per violation.

i.    **Sec. 18d-165**, requiring a towing-motor carrier engaged in consensual towing to accept major credit cards for the payment of towing and storage fees.

## COUNT II
### Federal Preemption (As-Applied Preemption)

32.    Plaintiffs incorporate by reference herein the allegations in Paragraphs 1 through 31.

33.     A State may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier with respect to the transportation of property. 49 U.S.C. § 14501

34.     The 2007 State Towing Law has a forbidden significant effect on the price, routes and services of towing-motor carriers engaged in consensual towing in violation of 49 U.S.C. § 14705(c)(1).

35.     As a direct and proximate result of these violations of federal law, the rights of the individual towing-motor carrier plaintiffs and the towing-motor carriers represented by PTROI have been violated and they have suffered financial injury.

36.     The rights of Plaintiffs will continue to be violated and will suffer additional future injury unless Defendants are enjoined from enforcement of the 2007 State Towing Law.

**COUNT III**
**Lack of regulatory jurisdiction (*ultra vires* enforcement)**

37.     Plaintiffs incorporate by reference herein the allegations in Paragraphs 1 through 36.

38.     The 2007 State Towing Law provides that is shall be unlawful for:

[A]ny commercial vehicle safety relocator to operate in any county in which this Chapter is applicable without a valid, current safety relocator's registration certificate issued by the Illinois Commerce Commission. The Illinois Commerce Commission *shall issue safety relocator's registration certificates* in accordance with administrative rules adopted by the Commission. . . . .

625 ILCS 5/18d-115 (2007)(Emphasis supplied).

39.     As of the date of the filing of this Complaint, the Illinois Commerce Commission does not have a process in place in which an entity can obtain a "valid, current safety relocator's registration certificate."

40.     The Illinois Commerce Commission does not presently issue "safety relocator's registration certificates."

41.     The Illinois Commerce Commission has not completed the promulgation or adoption of the administrative rules for registration under the 2007 State Towing Law. Indeed, the notice period on the proposed towing regulations was recently extended an additional forty-five (45) days.  The proposed regulations will not be finalized until after August 2008.

42.     Nevertheless, since July 1, 2008, the Illinois Commerce Commission has issued and is continuing to issue numerous Administrative Citations to towing-motor carriers for alleged violations of the 2007 State Towing Law on the basis that the commercial vehicle safety relocation are required "registrants" under the law.

43.     The Illinois Commerce Commission lacks authority and jurisdiction to issue Administrative Citations against towing-motor carriers because, in violation of its statutory duty, it has not established a procedure for Illinois towing-motor carriers to obtain a "safety relocator's registration certificate."

**<u>COUNT IV</u>**
**<u>Due process (arbitrary and capricious enforcement)</u>**

44.     Plaintiffs incorporate by reference herein the allegations in Paragraphs 1 through 43.

13

45.    On July 7, 2008, Plaintiff Wes's Service, Inc. was issued a $750.00 Administrative Citation by an ICC police officer for failing to provide a customer with a pre-tow disclosure form required by Section 18d-120.

46.    The towing service performed by Wes's Service was initiated by a phone call from an auto repair facility to tow an unattended, disabled vehicle to the repair facility.  The owner of the vehicle was not present at the scene of a tow, thus an immediate pre-tow disclosure form is not required under the 2007 State Towing Law.

47.    On July 11, 2008, Plaintiff North Shore Towing, Inc. was issued a $750.00 Administrative Citation by an ICC police officer for failing to issue a pre-tow disclosure form.

48.    The towing service performed by North Shore Towing, Inc. was initiated by a third-party commercial entity for warranty service on an automobile in which the consent of the owner/operator of the automobile was not required.

49.    All of the above-referenced Administrative Citations by the ICC police officers were issued pursuant to the 2007 State Towing Law.

50.    The ICC's enforcement of the 2007 State Towing Law is arbitrary and capricious.

51.    The ICC is randomly and inconsistently enforcing the 2007 State Towing Law without the benefit of guidelines, rules or regulations.

52.    This arbitrary enforcement of 2007 State Towing Law is not in furtherance of the purpose and intent of said Law and is in violation of the individual Plaintiffs' rights to due process under the Federal and State Constitutions.

53.    The absence of properly promulgated rules and regulations has resulted in arbitrary, inconsistent, selective, and capricious enforcement of the 2007 State Towing Law by the ICC.

54.    As a direct and proximate result of the Illinois Commerce Commission's arbitrary, inconsistent, selective, and capricious enforcement of the 2007 State Towing Law, the rights of Wes's Service, Inc., North Shore Towing, Inc. and of the other towing-motor carriers represented by PTROI have been violated, and they have suffered irreparable financial injury.

55.    The rights of Wes's Service, Inc., North Shore Towing, Inc., and of the other towing-motor carriers represented by PTROI will continue to be violated and will suffer additional irreparable financial injury unless Defendants are enjoined from enforcement of the 2007 State Towing Law.

## **RELIEF REQUESTED**

**WHEREFORE,** Plaintiffs pray that this Honorable Court grant them the following relief:

(A)    Declaratory judgment and determination that the 2007 State Towing Law, to the extent it regulates the price and/or service of consensual towing in matters not genuinely responsive to safety concerns, is expressly preempted by federal law and in conflict with the Constitution and laws of the United States; and

(B)    Issuance of temporary and permanent injunctions enjoining the Defendants, their agents and employees, from enforcement of the preempted provisions of the 2007 State Towing Law; and

(C)    An award of reasonable attorneys' fees and costs; and

(D)     Any such further relief as the Court deems just and equitable.


                                        **RESPECTFULLY SUBMITTED,**

                                        PROFESSIONAL TOWING AND
                                        RECOVERY OPERATORS OF
                                        ILLINOIS, WES'S SERVICE, INC., and
                                        NORTH SHORE TOWING, INC.,


                                        By:   /s/ Donald S. Rothschild
                                        Donald S. Rothschild
                                        Goldstine, Skrodzki, Russian,
                                        Nemec and Hoff, Ltd.
                                        835 McClintock Drive, Second Floor
                                        Burr Ridge, IL 60527
                                        (630) 655-6000

                                        Michael P. McGovern
                                        *Pro hac vice* counsel
                                        The McGovern Law Firm
                                        3021 Tazewell Pike
                                        Post Office Box 5536
                                        Knoxville, TN 37928
                                        (865) 686-4981

16

IL LEGIS 95-562 (2007)                                                                 Page 1
2007 Ill. Legis. Serv. **P.A. 95-562** (S.B. 435) (WEST)

# ILLINOIS 2007 LEGISLATIVE SERVICE
## Ninety-Fifth General Assembly, 2007

Copr. © 2007 Thomson/West

Additions are indicated by **Text**; deletions by
~~Text~~. Changes in tables are made but not highlighted.

## PUBLIC ACT 95-562
## S.B. 435
## VEHICLES--TOWING--SAFETY

AN ACT concerning transportation.

Be it enacted by the People of the State of Illinois, represented in the
General Assembly:

Section 5. The Illinois Vehicle Code is amended by changing Sections 1-100, 4-203, and 18a-105 and by adding Chapter 18d as follows:

<< IL ST CH 625 § 5/1-100 >>

[S.H.A. 625 ILCS 5/1-100] (625 ILCS 5/1-100) (from Ch. 95 1/2, par. 1-100)

§ 1-100. Short Title. This Act may be cited as the Illinois Vehicle Code.

Portions of this Act may likewise be cited by a short title as follows:

Chapters 2, 3, 4 and 5: the Illinois Vehicle Title & Registration Law.

Chapter 6: the Illinois Driver Licensing Law.

Chapter 7: the Illinois Safety and Family Financial Responsibility Law.

Chapter 11: the Illinois Rules of the Road.

Chapter 12: the Illinois Vehicle Equipment Law.

Chapter 13: the Illinois Vehicle Inspection Law.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Chapter 14: the Illinois Vehicle Equipment Safety Compact.

Chapter 15: the Illinois Size and Weight Law.

Chapter 17: the Illinois Highway Safety Law.

Chapter 18a: the Illinois Commercial Relocation of Trespassing Vehicles Law.

Chapter 18b: the Illinois Motor Carrier Safety Law.

Chapter 18c: the Illinois Commercial Transportation Law.

**Chapter 18d: The Illinois Commercial Safety Towing Law.**

(Source: P.A. 89-92, eff. 7-1-96.)

. . . .

**[S.H.A. 625 ILCS 5/Chapter 18d heading]** (625 ILCS 5/Chapter 18d heading new)

**CHAPTER 18d. ILLINOIS COMMERCIAL SAFETY TOWING LAW**

<< IL ST CH 625 § 5/18d-101 >>

**[S.H.A. 625 ILCS 5/18d-101]** (625 ILCS 5/18d-101 new)

**§ 18d-101. Short title. This Chapter may be cited as the Illinois Commercial Safety Towing Law.**

<< IL ST CH 625 § 5/18d-105 >>

**[S.H.A. 625 ILCS 5/18d-105]** (625 ILCS 5/18d-105 new)

**§ 18d-105. Definitions. As used in this Chapter:**

**(1) "Commercial vehicle safety relocator" or "safety relocator" means any person or entity engaged in the business of removing damaged or disabled vehicles from public or private property by means of towing or otherwise, and thereafter relocating and storing such vehicles.**

**(2) "Commission" means the Illinois Commerce Commission.**

<< IL ST CH 625 § 5/18d-110 >>

IL LEGIS 95-562 (2007)                                                                                      Page 3
 2007 Ill. Legis. Serv. **P.A. 95-562** (S.B. 435) (WEST)

**[S.H.A. 625 ILCS 5/18d-110]** (625 ILCS 5/18d-110 new)

§ 18d-110. The General Assembly finds and declares that commercial vehicle towing service in the State of Illinois fundamentally affects the public interest and public welfare. It is the intent of the General Assembly, in this amendatory Act of the 95th General Assembly, to promote the public interest and the public welfare by requiring similar basic consumer protections and fraud prevention measures that are required of other marketplace participants, including the disclosure of material terms and conditions of the service to consumers before consumers accept the terms and conditions. The General Assembly also intends that the provisions in this amendatory Act of the 95th General Assembly promote safety for all persons and vehicles that travel or otherwise use the public highways of this State. The General Assembly finds that it is in the public interest that persons whose vehicles are towed from the public highways know important basic information, such as where they can retrieve their vehicles and the cost to retrieve their vehicles, so that they can avoid vehicle deterioration and arrange for a prompt repair of the vehicles.

<< IL ST CH 625 § 5/18d-115 >>

**[S.H.A. 625 ILCS 5/18d-115]** (625 ILCS 5/18d-115 new)

§ 18d-115. It shall be unlawful for any commercial vehicle safety relocator to operate in any county in which this Chapter is applicable without a valid, current safety relocator's registration certificate issued by the Illinois Commerce Commission. The Illinois Commerce Commission shall issue safety relocator's registration certificates in accordance with administrative rules adopted by the Commission. The Commission may, at any time during the term of the registration certificate, make inquiry, into the licensee's management or conduct of business or otherwise, to determine that the provisions of this Chapter and the rules of the Commission adopted under this Chapter are being observed.

<< IL ST CH 625 § 5/18d-120 >>

**[S.H.A. 625 ILCS 5/18d-120]** (625 ILCS 5/18d-120 new)

§ 18d-120. Disclosure to vehicle owner or operator before towing of damaged or disabled vehicle commences.

(a) A commercial vehicle safety relocator shall not commence the towing of a damaged or disabled vehicle without specific authorization from the vehicle owner or operator after the disclosures set forth in this Section.

(b) Every commercial vehicle safety relocator shall, before towing a damaged or disabled vehicle, give to each vehicle owner or operator a written disclosure providing:

(1) The formal business name of the commercial vehicle safety relocator, as registered with the Illinois Secretary of State, and its business address and telephone number.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(2) The address of the location to which the vehicle shall be relocated.**

**(3) The cost of all relocation, storage, and any other fees, without limitation, that the commercial vehicle safety relocator will charge for its services.**

**(4) An itemized description of the vehicle owner or operator's rights under this Code, as follows:**

**"As a customer, you also have the following rights under Illinois law:**

**(1) This written disclosure must be provided to you before your vehicle is towed, providing the business name, business address, address where the vehicle will be towed, and a reliable telephone number;**

**(2) Before towing, you must be advised of the price of all services;**

**(3) Upon your demand, a final invoice itemizing all charges, as well as any damage to the vehicle upon its receipt and return to you, must be provided;**

**(4) Upon your demand, your vehicle must be returned during business hours, upon your prompt payment of all reasonable fees;**

**(5) You have the right to pay all charges in cash or by major credit card;**

**(6) Upon your demand, you must be provided with proof of the existence of mandatory insurance insuring against all risks associated with the transportation and storage of your vehicle."**

**(c) The commercial vehicle safety relocator shall provide a copy of the completed disclosure required by this Section to the vehicle owner or operator, before towing the damaged or disabled vehicle, and shall maintain an identical copy of the completed disclosure in its records for a minimum of 5 years after the transaction concludes.**

**(d) If the vehicle owner or operator is incapacitated, incompetent, or otherwise unable to knowingly accept receipt of the disclosure described in this Section, the commercial vehicle safety relocator shall provide a completed copy of the disclosure to local law enforcement and, if known, the vehicle owner or operator's automobile insurance company.**

**(e) If the commercial vehicle safety relocator fails to comply with the requirements of this Section, the commercial vehicle safety relocator shall be prohibited from seeking any compensation whatsoever from the vehicle owner or operator, including but not limited to any towing, storage, or other incidental fees. Furthermore, if the commercial vehicle safety relocator or operator fails to comply with the requirements of this Section, any contracts entered into by the commercial vehicle safety relocator and the vehicle owner or operator shall be deemed null, void, and unenforceable.**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

<< IL ST CH 625 § 5/18d-125 >>

**[S.H.A. 625 ILCS 5/18d-125]** (625 ILCS 5/18d-125 new)

**§ 18d-125. Disclosures to vehicle owners or operators; invoices.**

(a) **Upon demand of the vehicle owner or operator, the commercial vehicle safety relocator shall provide an itemized final invoice that fairly and accurately documents the charges owed by the vehicle owner or operator for relocation of damaged or disabled vehicles. The final estimate or invoice shall accurately record in writing all of the items set forth in this Section.**

(b) **The final invoice shall show the formal business name of the commercial vehicle safety relocator, as registered with the Illinois Secretary of State, its business address and telephone number, the date of the invoice, the odometer reading at the time the final invoice was prepared, the name of the vehicle owner or operator, and the description of the motor vehicle, including the motor vehicle identification number. In addition, the invoice shall describe any modifications made to the vehicle by the commercial vehicle safety relocator, any observable damage to the vehicle upon its initial receipt by the commercial vehicle safety relocator, and any observable damage to the vehicle at the time of its release to the vehicle owner or operator. The invoice shall itemize any additional charges and include those charges in the total presented to the vehicle owner or operator.**

(c) **A legible copy of the invoice shall be given to the vehicle owner or operator, and a legible copy shall be retained by the commercial vehicle safety relocator for a period of 5 years from the date of release of the vehicle. The copy may be retained in electronic format. Records may be stored at a separate location.**

(d) **Disclosure forms required in accordance with this Section 18d-120 must be approved by the Commission.**

<< IL ST CH 625 § 5/18d-130 >>

**[S.H.A. 625 ILCS 5/18d-130]** (625 ILCS 5/18d-130 new)

**§ 18d-130. Disclosures to vehicle owners or operators; required signs. Every commercial vehicle safety relocator's storage facility that relocates or stores damaged or disabled vehicles shall post, in a prominent place on the business premises, one or more signs, readily visible to customers, in the following form:**

**YOUR CUSTOMER RIGHTS. YOU ARE ENTITLED BY LAW TO:**

**1. BEFORE TOWING, A WRITTEN DISCLOSURE STATING THE NAME OF THE TOWING AND STORAGE SERVICE, ITS BUSINESS ADDRESS AND TELEPHONE NUMBER, AND THE ADDRESS WHERE THE VEHICLE WAS TO BE TOWED.**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**2. BEFORE TOWING, THE PRICE OF ALL CHARGES FOR THE TOWING AND STORAGE OF YOUR VEHICLE.**

**3. UPON YOUR DEMAND FOR THE RETURN OF YOUR VEHICLE, A FINAL INVOICE ITEMIZING ALL CHARGES FOR TOWING, STORAGE, OR ANY OTHER SERVICES PROVIDED, AS WELL AS ANY DAMAGE IDENTIFIED TO THE VEHICLE AT THE TIME IT WAS TAKEN BY THE TOWING AND STORAGE FACILITY, AS WELL AS ANY DAMAGE TO THE VEHICLE IDENTIFIED UPON ITS RELEASE TO YOU.**

**4. THE RETURN OF YOUR VEHICLE, UPON YOUR DEMAND FOR ITS RETURN DURING BUSINESS HOURS AND YOUR PROMPT PAYMENT OF ALL REASONABLE FEES.**

**5. PAY ALL CHARGES IN CASH OR BY MAJOR CREDIT CARD.**

**6. UPON YOUR DEMAND, PROOF OF THE EXISTENCE OF INSURANCE, WHICH THE COMMERCIAL VEHICLE SAFETY RELOCATOR MUST MAINTAIN TO INSURE AGAINST RISK OF DAMAGE TO YOUR VEHICLE IN TRANSIT AND WHILE IN STORAGE. IF THE COMMERCIAL VEHICLE SAFETY RELOCATOR HAS COMPLIED WITH THE ABOVE RIGHTS, YOU ARE REQUIRED, BEFORE TAKING THE VEHICLE FROM THE PREMISES, TO PAY FOR THE SERVICES PROVIDED BY THE COMMERCIAL VEHICLE RELOCATOR.**

   The first line of each sign shall be in letters not less than 1.5 inches in height, and the remaining lines shall be in letters not less than one-half inch in height.

<< IL ST CH 625 § 5/18d-135 >>

   **[S.H.A. 625 ILCS 5/18d-135]** (625 ILCS 5/18d-135 new)

   **§ 18d-135. Record keeping. Every commercial vehicle safety relocator engaged in relocation or storage of damaged or disabled vehicles shall maintain copies of (i) all disclosures provided to vehicle owners or operators as required under this Chapter and (ii) all invoices provided to vehicle owners or operators as required under this Chapter. The copies may be maintained in an electronic format, shall be kept for 5 years, and shall be available for inspection by the Illinois Commerce Commission.**

   **Failure to provide requested documentation to the Illinois Commerce Commission within 3 business days of a request received from the Illinois Commerce Commission shall subject the commercial vehicle safety relocator to penalties imposed by the Illinois Commerce Commission. Penalties may include suspension of registration certificate and monetary fines up to $1,000 for each violation.**

<< IL ST CH 625 § 5/18d-140 >>

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

IL LEGIS 95-562 (2007)                                                                                       Page 7
2007 Ill. Legis. Serv. **P.A. 95-562** (S.B. 435) (WEST)

**[S.H.A. 625 ILCS 5/18d-140]** (625 ILCS 5/18d-140 new)

§ 18d-140. Any vehicle used in connection with any commercial vehicle safety relocation service must have painted or firmly affixed to the vehicle on both sides of the vehicle in a color or colors vividly contrasting to the color of the vehicle the name, address, and telephone number of the safety relocator. The Commission shall prescribe reasonable rules and regulations pertaining to insignia to be painted or firmly affixed to vehicles.

<< IL ST CH 625 § 5/18d-145 >>

**[S.H.A. 625 ILCS 5/18d-145]** (625 ILCS 5/18d-145 new)

§ 18d-145. Any vehicle used in connection with any commercial vehicle safety relocation service must carry in the power unit of the vehicle a certified copy of the currently effective safety relocator's registration certificate. Copies may be photographed, photocopied, or reproduced or printed by any other legible and durable process. Any person guilty of not causing to be displayed a copy of the safety relocator's registration certificate may in any hearing concerning the violation be excused from the payment of the penalty hereinafter provided upon a showing that the registration certificate was issued by the Commission, but was subsequently lost or destroyed.

<< IL ST CH 625 § 5/18d-150 >>

**[S.H.A. 625 ILCS 5/18d-150]** (625 ILCS 5/18d-150 new)

§ 18d-150. Waiver or limitation of liability prohibited.

(a) Commercial vehicle safety relocators engaged in the relocation or storage of damaged or disabled vehicles shall be prohibited from including a clause in contracts for the relocation or storage of vehicles purporting to waive or limit the commercial vehicle safety relocator's liability under this Code, in tort or contract, or under any other cognizable cause of action available to the vehicle owner or operator.

(b) Commercial vehicle safety relocators are prohibited from requiring the vehicle owner or operator to sign or agree to any document purporting to waive or limit the commercial vehicle safety relocator's liability under this Code, in tort or contract, or under any other cognizable cause of action available to the vehicle owner or operator.

(c) Any contract, release, or other document purporting to waive or limit the commercial vehicle safety relocator's liability under this Code, in tort or contract, or under any other cognizable cause of action available to the vehicle owner or operator, shall be deemed null, void, and unenforceable.

<< IL ST CH 625 § 5/18d-155 >>

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

IL LEGIS 95-562 (2007)                                                                           Page 8
 2007 Ill. Legis. Serv. **P.A. 95-562** (S.B. 435) (WEST)

**[S.H.A. 625 ILCS 5/18d-155]** (625 ILCS 5/18d-155 new)

**§ 18d-155. The Illinois Commerce Commission may request documentation or investigate business practices by a commercial vehicle safety relocator to determine compliance with this Chapter. Failure to comply with any Section of this Chapter, as determined by the Illinois Commerce Commission shall subject a commercial vehicle safety relocator to penalties imposed by the Illinois Commerce Commission. Penalties may include suspension of registration certificate and monetary fines up to $1,000 for each violation.**

<< IL ST CH 625 § 5/18d-160 >>

**[S.H.A. 625 ILCS 5/18d-160]** (625 ILCS 5/18d-160 new)

**§ 18d-160. Unlawful practice. Any commercial vehicle safety relocator engaged in the relocation or storage of damaged or disabled vehicles who fails to comply with Sections 18d-115, 18d-120, 18d-125, 18d-130, 18d-135, or 18d-150 of this Code commits an unlawful practice within the meaning of the Consumer Fraud and Deceptive Business Practices Act.**

<< IL ST CH 625 § 5/18d-165 >>

**[S.H.A. 625 ILCS 5/18d-165]** (625 ILCS 5/18d-165 new)

**§ 18d-165. Charges payable in cash or by major credit card. Any towing or storage charges accrued by the vehicle owner or operator shall be payable by the use of any major credit card, in addition to being payable in cash.**

<< IL ST CH 625 § 5/18d-170 >>

**[S.H.A. 625 ILCS 5/18d-170]** (625 ILCS 5/18d-170 new)

**§ 18d-170. Mandatory insurance coverage.**

**(a) A commercial vehicle safety relocator shall provide insurance coverage for all risks associated with the transportation of vehicles towed under this Chapter, as well as for areas where vehicles towed under this Chapter are impounded or otherwise stored, and shall adequately cover loss by fire, theft, or other risks.**

**(b) Upon the demand of the vehicle owner or operator, a commercial vehicle safety relocator shall promptly supply proof of the existence of this insurance.**

**(c) Any person who fails to comply with the conditions and restrictions of this subsection shall be fined not less than $100 nor more than $500.**

<< IL ST CH 625 § 5/18d-175 >>

**[S.H.A. 625 ILCS 5/18d-175]** (625 ILCS 5/18d-175 new)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**§ 18d-175. Disposition of funds.** All fees and fines collected by the Commission under this Chapter shall be paid into the Transportation Regulatory Fund in the State treasury. The money in that fund shall be used to defray the expenses of the administration of this Chapter.

<< IL ST CH 625 § 5/18d-180 >>

**[S.H.A. 625 ILCS 5/18d-180]** (625 ILCS 5/18d-180 new)

**§ 18d-180. The provisions of this Chapter apply to all the activities of safety relocators in any jurisdiction to which Chapter 18a of this Code applies in accordance with Section 18a-700.**

Section 10. The Consumer Fraud and Deceptive Business Practices Act is amended by changing Section 2Z as follows:

<< IL ST CH 815 § 505/2Z >>

[S.H.A. 815 ILCS 505/2Z] (815 ILCS 505/2Z) (from Ch. 121 1/2, par. 262Z)

§ 2Z. Violations of other Acts. Any person who knowingly violates the Automotive Repair Act, the Automotive Collision Repair Act, the Home Repair and Remodeling Act, the Dance Studio Act, the Physical Fitness Services Act, the Hearing Instrument Consumer Protection Act, the Illinois Union Label Act, the Job Referral and Job Listing Services Consumer Protection Act, the Travel Promotion Consumer Protection Act, the Credit Services Organizations Act, the Automatic Telephone Dialers Act, the Pay-Per-Call Services Consumer Protection Act, the Telephone Solicitations Act, the Illinois Funeral or Burial Funds Act, the Cemetery Care Act, the Safe and Hygienic Bed Act, the Pre-Need Cemetery Sales Act, the High Risk Home Loan Act, the Payday Loan Reform Act, the Mortgage Rescue Fraud Act, subsection (a) or (b) of Section 3-10 of the Cigarette Tax Act, the Payday Loan Reform Act, subsection (a) or (b) of Section 3-10 of the Cigarette Use Tax Act, the Electronic Mail Act, paragraph (6) of subsection (k) of Section 6-305 of the Illinois Vehicle Code, **Section 18d-115, 18d-120, 18d-125, 18d-135, or 18d-150 of the Illinois Vehicle Code,** Article 3 of the Residential Real Property Disclosure Act, the Automatic Contract Renewal Act, or the Personal Information Protection Act commits an unlawful practice within the meaning of this Act.

(Source: P.A. 93-561, eff. 1-1-04; 93-950, eff. 1-1-05; 94-13, eff. 12-6- 05; 94-36, eff. 1-1-06; 94-280, eff. 1-1-06; 94-292, eff. 1-1-06; 94-822, eff. 1-1-07.)

Section 99. Effective date. This Act takes effect July 1, 2008.

Approved: August 31, 2007

Effective: July 1, 2008

IL LEGIS 95-562 (2007)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# News *from the Illinois Commerce Commission*

Voice: Springfield. 217.782.5793  Chicago. 312.814.2850  FAX 217.524.0674   BBS 217.782.9233 http://www.icc.illinois.gov

## FOR IMMEDIATE RELEASE

June 26, 2008                                                          Beth Bosch
                                                                      Brian Sterling

### ICC TO ENFORCE NEW SAFETY TOWING LAW JULY 1

The Illinois Commerce Commission announced today that ICC Transportation Police will begin enforcing the new Illinois Commercial Safety Towing Law on July 1, the effective date of the law.   The new law establishes stronger protections for those whose vehicles are towed from private or public property or from any location when they have become damaged or disabled.

The Safety Towing Law applies to those towing companies conducting tows of damaged or disabled vehicles in Cook, DuPage, Kane, Will and Winnebago counties.  On September 1, 2008, any damaged or disabled vehicles towed in McHenry County will also be covered by the law.

Prior to a tow, the company must provide the customer with a written disclosure of the business name and address, the address where the vehicle will be towed and a reliable telephone number of the business relocating the vehicle.  The company also must:

- Advise a customer, before towing, the price of all services;
- Provide, upon request of the customer, an invoice itemizing all charges, as well as any damage to the vehicle upon its receipt and return;
- Return the vehicle, upon customer request, during business hours, after prompt payment of all reasonable fees;
- Accept payment of all charges in cash or major credit card; and
- Provide, upon customer demand, proof of the existence of mandatory insurance, insuring against all risks associated with the transportation and storage of the vehicle.

If the owner of the vehicle is incapacitated, incompetent, or otherwise unable to knowingly accept receipt of the disclosure, the commercial vehicle safety relocator shall provide a completed copy of the disclosure form to local law enforcement and, if known, vehicle owner or operator's automobile insurance company.

If the commercial vehicle safety relocator fails to comply with the requirements of the law, the tower will be prohibited from seeking compensation from the vehicle owner or operator and any contracts entered into by the commercial vehicle safety relocator and vehicle owner or operator will be unenforceable.

(more)

**527 East Capitol Avenue, Springfield, IL 62701**

Towing/Add One


Commercial vehicle safety relocation towing companies that plan to tow damaged or disabled vehicles removals within six counties, must register with the ICC. Pre and post towing disclosure forms, and complaint forms which have been approved by the Commission, are available on the ICC website, at www.icc.illinois.gov.


 Letters have been mailed out to Illinois towing companies, outlining the requirements of the new law. Details about the registration process and accompanying fees will be mailed out in the next few months.


Vehicle owners or commercial vehicle safety relocators who have questions concerning the requirements of the new law, may contact the ICC Transportation police at (847)294-4326 or by mail at 477 South River Road, Des  Plaines, Il   60016.

#####

Westlaw.

49 U.S.C.A. § 14501                                                                                        Page 1

**c**

**Effective: August 10, 2005**

United States Code
   Title 49. Transportation
      Subtitle IV. Interstate Transportation
         Part B. Motor Carriers, Water Carriers, Brokers, and Freight Forwarders
            Chapter 145. Federal-State Relations
               **§ 14501. Federal authority over intrastate transportation**

**(a) Motor carriers of passengers.--**
   **(1) Limitation on State law.**--No State or political subdivision thereof and no interstate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to--
      **(A)** scheduling of interstate or intrastate transportation (including discontinuance or reduction in the level of service) provided by a motor carrier of passengers subject to jurisdiction under subchapter I of chapter 135 of this title on an interstate route;

      **(B)** the implementation of any change in the rates for such transportation or for any charter transportation except to the extent that notice, not in excess of 30 days, of changes in schedules may be required; or

      **(C)** the authority to provide intrastate or interstate charter bus transportation.

   This paragraph shall not apply to intrastate commuter bus operations, or to intrastate bus transportation of any nature in the State of Hawaii.

   **(2) Matters not covered.**--Paragraph (1) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle, or the authority of a State to regulate carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

**(b) Freight forwarders and brokers.--**
   **(1) General rule.**--Subject to paragraph (2) of this subsection, no State or political subdivision thereof and no intrastate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker.

   **(2) Continuation of Hawaii's authority.**--Nothing in this subsection and the amendments made by the Surface Freight Forwarder Deregulation Act of 1986 shall be construed to affect the authority of the State of Hawaii to continue to regulate a motor carrier operating within the State of Hawaii.

**(c) Motor carriers of property.--**
   **(1) General rule.**--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

   **(2) Matters not covered.**--Paragraph (1)--

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**(A)** shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

**(B)** does not apply to the intrastate transportation of household goods; and

**(C)** does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

**(3) State standard transportation practices.--**
**(A) Continuation.**--Paragraph (1) shall not affect any authority of a State, political subdivision of a State, or political authority of 2 or more States to enact or enforce a law, regulation, or other provision, with respect to the intrastate transportation of property by motor carriers, related to--
   **(i)** uniform cargo liability rules,

   **(ii)** uniform bills of lading or receipts for property being transported,

   **(iii)** uniform cargo credit rules,

   **(iv)** antitrust immunity for joint line rates or routes, classifications, mileage guides, and pooling, or

   **(v)** antitrust immunity for agent-van line operations (as set forth in section 13907),

   if such law, regulation, or provision meets the requirements of subparagraph (B).

**(B) Requirements.**--A law, regulation, or provision of a State, political subdivision, or political authority meets the requirements of this subparagraph if--
   **(i)** the law, regulation, or provision covers the same subject matter as, and compliance with such law, regulation, or provision is no more burdensome than compliance with, a provision of this part or a regulation issued by the Secretary or the Board under this part; and

   **(ii)** the law, regulation, or provision only applies to a carrier upon request of such carrier.

**(C) Election.**--Notwithstanding any other provision of law, a carrier affiliated with a direct air carrier through common controlling ownership may elect to be subject to a law, regulation, or provision of a State, political subdivision, or political authority under this paragraph.

**(4) Nonapplicability to Hawaii.**--This subsection shall not apply with respect to the State of Hawaii.

**(5) Limitation on statutory construction.**--Nothing in this section shall be construed to prevent a State from requiring that, in the case of a motor vehicle to be towed from private property without the consent of the owner or operator of the vehicle, the person towing the vehicle have prior written authorization from the property owner or lessee (or an employee or agent thereof) or that such owner or lessee (or an employee or agent thereof) be present at the time the vehicle is towed from the property, or both.

**(d) Pre-arranged ground transportation.**--
**(1) In general.**--No State or political subdivision thereof and no interstate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law requiring a license or fee on account of the fact that a motor vehicle is providing pre-arranged ground transportation service if the motor carrier providing such service--

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

(A) meets all applicable registration requirements under chapter 139 for the interstate transportation of passengers;

(B) meets all applicable vehicle and intrastate passenger licensing requirements of the State or States in which the motor carrier is domiciled or registered to do business; and

(C) is providing such service pursuant to a contract for--
  (i) transportation by the motor carrier from one State, including intermediate stops, to a destination in another State; or

  (ii) transportation by the motor carrier from one State, including intermediate stops in another State, to a destination in the original State.

(2) **Intermediate stop defined.**--In this section, the term "intermediate stop", with respect to transportation by a motor carrier, means a pause in the transportation in order for one or more passengers to engage in personal or business activity, but only if the driver providing the transportation to such passenger or passengers does not, before resuming the transportation of such passenger (or at least 1 of such passengers), provide transportation to any other person not included among the passengers being transported when the pause began.

(3) **Matters not covered.**--Nothing in this subsection shall be construed--
  (A) as subjecting taxicab service to regulation under chapter 135 or section 31138;

  (B) as prohibiting or restricting an airport, train, or bus terminal operator from contracting to provide preferential access or facilities to one or more providers of pre-arranged ground transportation service; and

  (C) as restricting the right of any State or political subdivision of a State to require, in a nondiscriminatory manner, that any individual operating a vehicle providing prearranged ground transportation service originating in the State or political subdivision have submitted to pre-licensing drug testing or a criminal background investigation of the records of the State in which the operator is domiciled, by the State or political subdivision by which the operator is licensed to provide such service, or by the motor carrier providing such service, as a condition of providing such service.

CREDIT(S)

(Added Pub.L. 104-88, Title I, § 103, Dec. 29, 1995, 109 Stat. 899, and amended Pub.L. 105-178, Title IV, § 4016, June 9, 1998, 112 Stat. 412; Pub.L. 105-277, Div. C, Title I, § 106, Oct. 21, 1998, 112 Stat. 2681-586; Pub.L. 107-298, § 2, Nov. 26, 2002, 116 Stat. 2342; Pub.L. 109-59, Title IV, §§ 4105(a), 4206(a), Aug. 10, 2005, 119 Stat. 1717, 1754.)

Current through P.L. 110-276 (excluding P.L. 110-234, 110-246, 110-261, and 110-275) approved 7-15-08

Copr. (C) 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.